84 So.2d 560 (1956)
In re ESTATE OF Wm. F. ZIMMERMAN, Deceased.
T.G. MIXSON et al., Appellants,
v.
Roland ZIMMERMAN et al., Appellees.
Supreme Court of Florida. Special Division A.
January 13, 1956.
W.K. Zewadski, Holland, Betts & Holland, St. Petersburg, and Whitaker, Whitaker & Terrell, Tampa, for appellants.
J.F. Baya, Tarpan Springs, and Hill, Hill & Dickenson, Tampa, for appellees.
*561 THORNAL, Justice.
The proponents of the last will and testament and codicil of Wm. F. Zimmerman appeal from an order of the Circuit Judge affirming an order of the County Judge denying probate of the will and codicil on the ground that at the time the documents were signed, the decedent lacked testamentary capacity.
Common to cases of this kind, the record is voluminous. This one is perhaps unusually so. Indicating the energy and ingenuity with which counsel for the respective parties advocated the causes of their clients, there have been filed in this court 10 folios of testimony, consisting of 3,005 typewritten pages; depositions of witnesses were taken in Manchester, Iowa, New Orleans, Louisiana, Miami Beach, Florida, and Council Bluffs, Iowa; 13 volumes of the daily reports of a particular police officer; 342 pages of legal cap summarizing point by point and item by item the life history of the decedent from the time of his birth on August 2, 1872 until he died at the age of 82, on August 8, 1951; the original record of the probate court consisting of 119 pleadings and documents; the testimony of 106 witnesses; and literally hundreds of exhibits, many of them consisting of almost innumerable composite parts. We make reference to the size of this record to indicate that this cause was obviously strenuously contested, both in the probate court and on appeal before the circuit judge. The order of the probate judge denying the probate of the will and codicil and finding that the decedent was lacking in testamentary capacity at the time of the signing of the documents indicates to this court a thorough, conscientious and almost minute analysis of the testimony and the arguments offered by counsel.
The probate judge heard all of the witnesses, except those who testified by deposition, and, as we have observed in similar cases, he was in a much better position than we are to evaluate the effect of their testimony, and fit into the complex puzzle that confronted him the various pieces that went to make up the entire picture. Many of the witnesses he apparently knew personally or by reputation; he had an opportunity to view their reactions and the directness or apparent lack of sincerity of particular witnesses in giving their replies to questions. Through his direct contact with the case he was in a position to carry in his own mind the continuity of events as they unfolded before him on the witness stand. In fact, this record in our judgment clearly justifies the application of the rule which we have consistently followed that we will not interfere with the findings of fact or the conclusions of law reached by the probate judge on the basis of such factual findings unless there is an absence of substantial competent evidence to support the findings or the trial court misapprehends the legal effect of the evidence as a whole.
The circuit judge who heard the appeal likewise obviously gave thorough consideration to this record and, according to his order, heard oral arguments of counsel for the better part of three days. As an appellate judge, he properly followed the previous pronouncements of this court in adhering to the rule which we have above summarized.
An examination of the record before us, despite its complexity and taking into consideration the merits of the analysis of the facts as well as the principles of law so ably advanced by counsel for all of the parties, leads us again to the conclusion that there is adequate evidence to support the result reached by the probate judge and that there is no basis in this record for any conclusion on our part that he misinterpreted the legal effect of the evidence as a whole. This obviously leads to the further conclusion that in approving the order of the probate judge, the circuit judge ruled correctly. See In re Eberhardt's Estate, Fla. 1952, 60 So.2d 271; In re Wilmott's Estate, Fla. 1953, 66 So.2d 465; In re Kiggins' Estate, Fla. 1953, 67 So.2d 915; In re Baldridge's Estate, Fla. 1954, 74 So.2d 658; In Matter of Estate of Lizzie Thompson, Fla., 84 So.2d 911.
*562 Despite the prodigious record and briefs lodged in this court, the kernel of appellants' contention is that the testator, Wm. F. Zimmerman, had testamentary capacity at the time he executed his will of January 5, 1949, and the codicil thereto of December 22, 1949. Appellants who are the proponents contend that Hooper v. Stokes, 107 Fla. 607, 145 So. 855, 146 So. 668, rules the instant case, while appellees contend that it is ruled by Newman v. Smith, 77 Fla. 633, 667, 688, 82 So. 236. It is true that there are parallels in these cases to the case at bar but it is also true that it contains aspects that distinguish it from them.
A study of the pertinent cases reveals that the precise condition of the testator's mental health at the time he executed his will may be established in more ways than one. It may be established by direct proof as to its condition when the will was executed or it may be established by inferences from proof of his mental condition leading up to and following the execution of the will when such proof is properly related and connected. The evidence shows that the testator was afflicted with arteriosclerosis, a progressive disease of the arteries which seriously affects and may ultimately dethrone the reason, judgment and power of the victim to bear in mind the status of his property or those who would be the natural subjects of his bounty. The evidence here shows that sometime in 1947 or 1948 the testator was in a serious condition as a result of this affliction. What the condition of his mental health was when he executed his will and codicil in 1949 was the immediate problem confronting the probate court. "Before hand" and "afterward" proof of the testator's mental behavior would certainly be a lead to this and would be proper for the court to consider in making up his judgment as to whether or not the will was made during a lucid interval as appellants contend or whether it was made when the mind was incompetent to do so.
Then there are other factors that the court could take into consideration. The fact that the will and the codicil were unnatural in that it virtually disinherited the testator's children (gave them $50 each) and named 32 beneficiaries and the codicil 35, some of whom were casual acquaintances and had no claim on the testator's bounty, one of whom never existed, another was a college that had ceased to exist, others had never been in his home or he in theirs. "Spells," escapades and insane delusions before and after execution of the will and codicil were recounted to support the court's judgment that both were the product of a mind devoid of testamentary capacity. The environment out of which such evidences emanated determine their probative value but it is the court's prerogative to weigh them and determine this. There is in fact so much in the record that supports the finding of the probate court that to reverse him would amount to nothing more than substituting our judgment for his on a matter exclusively within his province which we are not authorized to do. Gardiner v. Goertner, 110 Fla. 377, 149 So. 186; In re Starr's Estate, 125 Fla. 536, 170 So. 620; In re Wilmot's Estate, Fla. 1953, 66 So.2d 465; Hooper v. Stokes, 107 Fla. 607, 145 So. 855, 146 So. 668.
In this determination we have not overlooked the force of Appendices 1 and 2 of appellants' brief. Appendix 1 having to do with activities of the testator from the cradle to the grave and Appendix 2 relating to testimony before the probate court in the case of In re Garrett's Estate, Fla. 1952, 60 So.2d 281, which, among others, approves the well settled rule that the finding of the probate court affirmed by the circuit court in a will contest is conclusive on appeal unless clearly erroneous or against the manifest weight of the evidence. Appellants contend that the testator was sane except when confined to St. Joseph's Hospital several days in 1949. The probate judge did not so find and we find ample support for his finding. We find very little support for the lucid interval contention but we find ample support for the finding of the probate court and feel impelled to uphold his finding and *563 judgment which was approved by the circuit court.
The cause has been thoroughly considered and finding no error, the order appealed from, the decree of the Chancellor, is
Affirmed.
DREW, C.J., TERRELL, J., and DICKINSON, Associate Justice, concur.